STANDARD RICE CO., INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 9868. Promulgated September 12, 1928.

*E. Barrett Prettyman, Esq., F. R. Gibbs, Esq.*, and *Preston B. Kavanagh, Esq.*, for the petitioner.

*F. R. Shearer, Esq.*, for the respondent.

## OPINION.

SMITH: Considering first the question of the bar of the statute of limitations as it relates to the determination of the Commissioner of a deficiency in income and profits tax for the fiscal year ended July 31, 1918, it is to be noted that the petitioner's tax return for the fiscal year ended July 31, 1918, was filed on June 14, 1919. The Commissioner had five years from the date of the return within which to make an assessment and collection of a deficiency in tax. Section 250'(d), Revenue Act of 1921. The Commissioner made an assess-

ment of a deficiency within such five-year period, the assessment being made on the September, 1923, list. Under the provisions of section 278 of the Revenue Act of 1924, the Commissioner had six years within which to collect such assessment, the collection of the assessment not being barred by the five-year period of limitation of the 1921 Act until after the effective date of the Revenue Act of 1924. The effective date of that Act is June 2, 1924, and the five-year period of limitation for collection would not have expired under the 1921 Act until June 15, 1924. The facts in this case are identical with those which obtained in *Art Metal Works*, 9 B. T. A. 491, and the decision in that case is controlling here so far as the deficiency covered by the assessment made in September, 1923, is concerned.

The petitioner filed a consent for the determination of its tax liability for the year 1918 on January 24, 1924. The determination of a further deficiency for the fiscal year ended July 31, 1918, was made by the Commissioner within the period of extension covered by the consent, the deficiency notice having been sent to the petitioner on October 14, 1925. An appeal having been taken within 60 days from the date of such notice of deficiency, the only question which it is necessary for us to determine is whether the deficiency notice was sent within the period of extension of the consent filed on January 24, 1924. The five-year period allowed by the statute for the determination of a deficiency for the fiscal year ended January 31, 1918, expired on June 14, 1924, that date being five years after the filing of the return. The consent filed gave an additional period of one year within which to make a determination of the deficiency, or until June 14, 1925. The determination of the deficiency not covered by the assessment made in September, 1923, was made on October 14, 1925, or more than one year after the expiration of the period of limitations allowed by statute. It appears therefore that the determination of the further deficiency of $3,098.05 for the fiscal year ended July 31, 1918, is barred by the statute of limitations.

Section 327 of the Revenue Act of 1918 provides in part:

That in the following cases the tax shall be determined as provided in section 328:

\* \* \* \* \* \* \*

(d) Where upon application by the corporation the Commissioner finds and so declares of record that the tax as determined without benefit of this section would, owing to abnormal conditions affecting the capital or income of the corporation, work upon the corporation an exceptional hardship evidenced by gross disproportion between the tax computed without benefit of this section and the tax computed by reference to the representative corporations specified in section 328. This subdivision shall not apply to any case (1) in which the tax (computed without benefit of this section) is higher merely because the corporation earned within the taxable year a higher rate of profit upon a normal invested capital, nor (2) in which 50 per centum or more of the gross

income for the taxable year (computed under section 233 of Title II) consists of gains, profits, commissions, or other income, derived on a cost-plus basis from a Government contract or contracts made between April 6, 1917, and November 11, 1918, both dates inclusive.

The petitioner bases its claim to assessment under the provisions of section 328 upon the grounds (1) that it was granted special assessment under section 210 of the Revenue Act of 1917 in determining its excess-profits-tax liability for the fiscal year ended July 31, 1917; (2) that its profits for the prewar year 1913 were abnormally low; and (3) that it had an abnormality of invested capital for the fiscal years ended July 31, 1918, and July 31, 1919, by reason of the fact that it borrowed large amounts of money during those years for the financing of its operations.

We regard it as wholly immaterial that the petitioner was granted special assessment under the provisions of section 210 of the Revenue Act of 1917 in the determination of its tax liability for the fiscal year ended July 31, 1917. The facts with respect to the petitioner's income and invested capital for that year are not before us. We can not determine whether the facts obtaining for that year warranted the granting of special assessment, nor whether the rate determined for that year was proper. The Board has held in numerous cases that the granting of special assessment in one year does not of itself warrant the granting of special assessment for a succeeding year. *Chalmers Publishing Co.*, 1 B. T. A. 629; *Insley Manufacturing Co.*, 1 B. T. A. 1029; *Youngstown Bread Co.*, 2 B. T. A. 402.

The record of this action shows that the net income of the petitioner for the calendar year 1913 was much less than the net income for the two prior years. There was a break in the prices of rice in the latter part of 1912 and this fact, it is alleged, operated to reduce the profits of the petitioner for the year 1913. This company is not the only one that was adversely affected by such a break in prices. The evidence indicates that all companies engaged in a similar business were likewise adversely affected by the drop in prices. The evidence does not show that the earnings of this petitioner for the prewar year 1913 were abnormally low. We can not determine that the situation of this petitioner in 1913 was different from that of other companies engaged in the rice-milling industry.

The petitioner places chief reliance in its claim for special assessment for the fiscal years ended in 1918 and 1919 upon the fact that during those years it borrowed large amounts of money in financing its operations. The petitioner's average invested capital for the year ended July 31, 1918, was $1,711,638.81, and for the fiscal year ended July 31, 1919, $1,883,976.69. Petitioner had no bonded indebtedness. It had no need for large amounts of capital except for a period of about six months during each of its fiscal

years. The average amount borrowed for the fiscal year ended July 31, 1918, was approximately $800,000, and the average amount borrowed during the succeeding year was slightly less than $400,000. The credit of the petitioner was good and it was able to borrow all the money that it needed at the prevailing rates for money upon its own notes, without security. The record does not show whether this company borrowed greater amounts during the taxable years than its competitors. We can not determine from the record whether the borrowings were abnormally large. In *Higginbotham-Bailey-Logan Co.*, 8 B. T. A. 566, the petitioner claimed that it was entitled to special assessment under the provisions of section 328 of the Revenue Act of 1918. Its argument was based primarily upon the amount of borrowed money used. It appears that during the year its invested capital was $2,656,613.61 and its average borrowed capital $2,189,025.25. In our opinion we stated:

In many businesses this would not be regarded as unusual or abnormal and in the absence of any evidence that it is abnormal in the wholesale dry goods business, there is nothing on which we may base an opinion as to normality or abnormality.

The same observation may be made here. We can not determine from the evidence that the borrowing of money on short-term notes was any hardship to the petitioner. It apparently deliberately followed this method of financing its operations. Rather than have a large amount of idle capital on its hands during a portion of each of the taxable years, the petitioner preferred to borrow money as it needed it on short-time notes during the year. Upon the record we sustain the Commissioner's determination that the petitioner is not entitled to have its tax liability for the fiscal years involved determined under the provisions of section 328 of the taxing act.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*